FILED
2021 Jul-23  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LORI LUEBBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: _____** |
| | ) | |
| **SUN LIFE ASSURANCE** | ) | |
| **COMPANY OF CANADA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Lori Luebbert, and hereby files her Complaint against Sun Life Assurance Company of Canada.

## PARTIES

1.     The Plaintiff, Lori Luebbert ("Ms. Luebbert"), is an insured under Long-Term Disability Policy No. 224775 ("the Plan" or "the Policy").

2.     Defendant, Sun Life Assurance Company of Canada ("Sun Life"), is the Claims Administrator for the Plan, issued to Covenant Healthcare Systems. ("Covenant").  Upon information and belief, Sun Life is a foreign corporation doing business in the state of Alabama, specifically within this district.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long-term

disability benefits, enforcement of ERISA rights and statutory violates of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.      The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Luebbert, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciary. Instead, the Defendant has victimized Ms. Luebbert by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendant to avoid paying Ms. Luebbert's valid claim that would otherwise be payable under state insurance law. With no jury trial and no punitive damages, despite the unscrupulous conduct of the Defendant, Ms. Luebbert's "relief" is limited to the amount of benefits to which she was clearly entitled in the first place, with merely the possibility of interest and attorney's fees. As described in more detail below, the Defendant has clearly engaged in bad faith claim handling and Ms. Luebbert, at minimum, is patently entitled all relief that ERISA provides.

2

## STATEMENT OF FACTS

5.     Ms. Luebbert is an insured under the Sun Life Assurance Company of Canada, No. 224775, issued to her employer, Covenant. Sun Life is the Administrator of the plan. The policy provides insureds, like Ms. Luebbert, long-term disability benefits.

6.     Ms. Luebbert was born on November 12, 1963. She worked for Covenant as a respiratory care shift leader until her disabilities forced her to stop working on or around May 16, 2017.

7.     Ms. Luebbert's medical disabilities include fibromyalgia, chronic fatigue syndrome, migraines, mental fog, impaired memory and concentration, diffuse chronic pain, insomnia, plantar faciitis, neuropathy, carpal tunnel syndrome, dizziness, PSVT, shortness of breath, chest pain, depression, anxiety, IBS, deficiencies in potassium and vitamin D, hypertension, GERD, OSA, bursitis of hips, and cervical myofacial pain syndrome, all of which are compounded with the side effects of the various medications prescribed by her physicians in response to these ailments. As a result, Ms. Luebbert is unable to work in any capacity.

8.     Ms. Luebbert was originally out of work on or around May 16, 2017 due to muscle weakness, chronic pain, memory loss, anxiety, and depression. For the previous five months, Ms. Luebbert had been visiting her physician in an attempt to alleviate her symptoms. However, her symptoms continued to worsen, leading her

primary care physician, Dr. Dominador Laynes to label her as "disabled" as a result of the aforementioned ailments.

9.      Due to her inability to work, Ms. Luebbert applied for short-term disability benefits from Sun Life on May 19, 2017, and was approved on August 3, 2017. Ms. Luebbert was given a disability date of May 16, 2017.

10.     Despite her recent approval, Ms. Luebbert's conditions failed to improve. Her visits to Dr. Laynes resulted in a series of referrals to other specialists.

11.     Despite abundant evidence that Ms. Luebbert's conditions failed to improve and she remained disabled, Sun Life notified Ms. Luebbert by letter dated December 6, 2017 that she no longer met the policy definition of disabled and therefore her claim was closed.

12.     Sun Life primarily justified its initial wrongful denial of benefits based off of the opinions of paid reviewers who have never even met Ms. Luebbert.

13.     The reviewers audaciously opined that, despite medical evidence to the contrary, the requirements of Ms. Luebbert's job at Covenant were within her functional capabilities.

14.     Ms. Luebbert appealed her wrongful denial of benefits by letter dated June 1, 2018. Along with her appeal, Ms. Luebbert included additional documentation from her treating physicians. This documentation clearly demonstrates that Ms. Luebbert's conditions have not improved and her disability is

ongoing.

15.   Included with the appeal were multiple reports from Ms. Luebbert's psychaitrist, Dr. Ali Ibhrahim. In his reports, Dr. Ibrahim diagnosed Ms. Luebbert with an "adjustment disorder with mixed emotions and anxiety".

16.   Also included was a report from Ms. Luebbert's admission to the hospital on January 12, 2018. This report, written by Dr. Asim Yunus, confirmed Ms. Luebbert's diagnosis of multiple ailments—fibromyalgia, paroxysmal supraventricular tachycardia, gastroesophageal reflux disease, hypertension, and irritable bowel syndrome, to name a few.

17. An additional report from Dr. Laynes dated February 8, 2018 opined that "...[Ms. Luebbert] cannot physically and mentally hold gainful employment" as a result of her disability.

18. Despite this letter and the plethora of medical evidence showing Ms. Luebbert to be disabled, Sun Life denied Ms. Luebbert's appeal by letter dated August 21, 2018. The final denial letter, like previous letters, improperly determined that Ms. Luebbert failed to meet the policy definition of disabled, and once again based its determination off of paid medical reviewers.

19.   The paid physicians audaciously opined that Ms. Luebbert, a woman suffering from severe chronic pain as a result of fibromyalgia, plantar faciitis, and carpal tunnel syndrome, as well as chronic anxiety, depression, and memory loss,

required very few limitations and could work in a full-time, sedentary occupation.

20.     Sun Life's paid physicians noted Ms. Luebbert's diagnoses but somehow arrived at the conclusion that these diagnoses did not preclude her ability to work, a conclusion different from that of Ms. Luebbert's primary care physician, Dr. Laynes.

21.     Ultimately, Sun Life improperly concluded that "[Ms. Luebbert] has no physical or behavioral health restrictions and limitations."

22.     Sun Life's denial letters are simply an attempt to "cherry-pick" Ms. Luebbert's medical records for evidence that supports the policy's termination and gives little to no weight to the plethora of medical evidence that supports Ms. Luebbert's disability.

23.     As of this date, Ms. Luebbert has been denied benefits rightfully owed to her under the Plan. Sun Life's decision to deny benefits under this long-term disability policy was grossly wrong, without basis, and contrary to the evidence.

24.     Ms. Luebbert has met and continues to meet the Plan's definition of "totally disabled".

25.     The Defendant did not establish and maintain a reasonable procedure or provide a full and fair review of Ms. Luebbert's claim as required by ERISA. Instead, Defendant acted in its own pecuniary interests and violated ERISA by conducting including but not limited to the following: breaching its fiduciary duty

to the Plaintiff; reviewing the claim in a manner calculated to reach the desired result of denying benefits; and failing to properly consider and credit the medical opinions of Ms. Luebbert's medical providers.

26. Upon information and belief, Sun Life evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

27. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Defendant or to any other entity who may have adjudicated Ms. Luebbert's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

28. Ms. Luebbert has exhausted any applicable administrative review procedures and Defendant's refusal to pay benefits is erroneous, unreasonable, and has caused tremendous financial hardship on Plaintiff.

### **DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT**

**A. Defendant's Determination that Plaintiff does not meet the Definition of Total Disability as Stated in the Plan was both Erroneous and Unreasonable.**

29. The LTD Plan at issue states, in part:

"**Total Disability** or **Totally Disabled** means the employee, because of injury or sickness, is unable to perform the material and substantial duties of his own

7

occupation." (Emphasis original).

30.    Sun Life relied upon the opinions of its own paid medical reviewers in justifying the denial of Ms. Luebbert's LTD benefits.

31. On August 3, 2017, Dr. Sharon Hogan, MD, conducted an Independent Peer Review based on documents provided by Sun Life. In her review, Dr. Hogan noted Ms. Luebbert's diagnosis of fibromyalgia as well as Dr. Laynes' statement that Ms. Luebbert suffered from a class 4 physical limitation. Furthermore, Dr. Hogan stated that "The available medical information supports that Ms. Luebbert was functionally impaired as of May 16, 2017".

32. In light of this review, Sun Life was forced to reverse its initial denial of STD benefits for Ms. Luebbert. However, Sun Life then sought other independent peer reviews to support its denial of Ms. Luebbert's LTD benefits.

33. On Novemeber 27, 2017, another Independent Peer Review was completed by Stephen Broomes, MD. Dr. Broomes identified Ms. Luebbert as suffering from anxiety, depression, chronic pain and fatigue, knee pain, mucle weakness, obstructive sleep apnea, and subclinical hypothyroidism. Despite this, and without having even examined Ms. Luebbert, Dr. Broomes concluded that "there are no active functional impairments supported."

34. This finding is contrary not only to the opinion of Ms. Luebbert's treating physician but also to that of Dr. Hogan, the first physician hired by Sun Life to

conduct an independent review. Rather than accept the findings of these physicians and approve Ms. Luebbert's LTD claim, Sun Life opted to "shop around" for a review that would support its denial of benefits.

35.     Upon Ms. Luebbert's appeal of her wrongful LTD denial, Sun Life had her undergo an in-person medical examination by Dr. Shlomo Mandel, MD on July 24, 2018. Dr. Mandel noted that "the medical record [for Ms. Luebbert] is replete with complaints of pain" but found "no sign of disability or limitation."

36. Sun Life primarily justified its denial of Ms. Luebbert's LTD appeal with Dr. Broomes' and Dr. Mandel's reports. Dr. Mandel's findings are contrary to the opinions of Ms. Luebbert's treating physicians. Furthermore, Dr. Mandel only performed a single cursory examination of Ms. Luebbert as opposed to Ms. Luebbert's physicians who have been treating her for years and are naturally more familiar with her condition. Accordingly, Defendant's contention that Ms. Luebbert failed to prove that she was disabled under the LTD Plan must be rejected.

### B. Defendant's Decision to Deny LTD Plan Benefits was not Supported by Substantial Evidence.

37.     In its consideration of Ms. Luebbert's claim, Defendant only retained paid consultants to review her file. Defendant based its denials entirely on the allegations that Ms. Luebbert's medical records do not demonstrate that her disabilities give her an active functional impairment. In denying Ms. Luebbert's claim, Sun Life failed to give proper weight to the medical evidence provided by her

treating physicians.

    1.  <u>Defendant's Reliance on Paper-Reviews to Deny Benefits on the Basis of Insufficient Evidence Was Arbitrary and Capricious.</u>

38.    Ms. Luebbert's claim file is replete with medical records from her treating physicians extensively detailing her physical limitations. Ms. Luebbert's physicians' assessments, treatment and medications they prescribed and administered, all demonstrate that Ms. Luebbert's diagnosed disabilities were extremely debilitating.

39.    The records of Ms. Luebbert's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that she is disabled based on their numerous personal examinations, testing, and procedures.  Sun Life's initial hired medical reviewers, on the other hand, did not examine Ms. Luebbert.  The initial LTD conclusion that Ms. Luebbert was not disabled was based merely on hired reviewers' assessment of her paper medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the

opinion of its consulting physician").

40.     In weighing the opinions of Ms. Luebbert's providers against those of the independent reviewers retained by Sun Life, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).  The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual."  While *Nord* provides that this Court is not required to adopt a per se rule to treat Ms. Luebbert's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

41.     Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001).   The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).   The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias.   Clearly, in Ms. Luebbert's case, these decisions indicate that her own medical physicians' evaluations should be afforded far greater weight than those of Defendant, especially since Defendant's initial reviewers never bothered with even one of the multiple physical exams allowed by the Plan.   Accordingly, Defendant's denial of Ms. Luebbert's LTD benefits, based on insufficient evidence, was arbitrary and capricious.

42.     Ms. Luebbert's treating physicians, who have no financial stake in the outcome of her claim, reached the opinion that she is disabled based on their numerous examinations of her.

43.     The baseless findings of Sun Life's paid reviewing physicians stand alone as the only findings in Ms. Luebbert's file suggesting that she is not disabled and are overwhelmed by the numerous treatment records and the opinions of her treating physicians suggesting the opposite.

44.     Accordingly, Defendant's denial of Ms. Luebbert's Plan benefits was not properly supported.

2.     Defendant's Failure to Properly Credit Ms. Luebbert's Well-Documented Subjective Complaints Was Arbitrary and Capricious.

45.     Admittedly, some of Ms. Luebbert's disabling impairments have subjective components; however, they have been diagnosed by her treating physicians based on her medical history, extensive testing, and physical examinations.   Defendant far exceeds its discretion to ascertain Ms. Luebbert's credibility by characterizing the bulk of her treatment records as somehow flowing from her own subjective reports of pain, and thus equally subject to rejection as non-credible.

46.     The dismissal by Sun Life of Ms. Luebbert's well-documented complaints of chronic pain resulting from fibromyalgia and other ailments is much like cases involving subjective complaints of chronic pain that had been addressed by previous courts. In *Quigley v. UNUM Life Ins. Co. of America,* 340 F. Supp. 2d 215, 224 (D. Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to

contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints."

47.     An administrator may not exclude a claim for lack of objective medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [plaintiff's] objectively reasonable expectations of coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.,* 35 F.3d 382, 387 (9th Cir. 1994); *see also May v. Metro. Life Ins. Co.,* 2004 U.S. Dist. LEXIS 18486, *26 (N.D. Cal. Sept. 9, 2004) ("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."); *see also Duncan v. Continental Cas. Co.,* 1997 U.S. Dist. LEXIS 1582, *15-17 (N.D. Cal. Feb. 10, 1997) (finding an insurer improperly denied the claim of the plaintiff, who had fibromyalgia, due to a lack of "objective medical evidence" to support her disability claim).

48.     In *Creel v. Wachovia Corp.,* No. 08-10961, 2009 U.S. App. LEXIS 1733, 2009 WL 179584 (11th Cir. Jan. 27, 2009) and *Oliver v. Coca-Cola Co.,* 497 F.3d 1181, 1196-97 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In *Creel,* the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received

long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard diagnoses, and lab reports to support her claim, but the district court entered summary judgment against her because she did not provide objective evidence. The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review.

2009 U.S. App. LEXIS 1733, [WL] at *7.

49.     Applying this standard, the Court of Appeals in *Creel* found that the records offered by the plaintiff to corroborate her subjective complaints of disabling headaches were sufficient to support her claim and held that the administrator's decision was both wrong and unreasonable. 2009 U.S. App. LEXIS 1733, [WL] at *8.  Similarly, in *Oliver*, the plaintiff sued his employer to recover long-term

disability benefits based upon radiculopathy and associated cervical pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it was arbitrary and capricious for an employer to deny benefits for disabilities involving elements of subjective pain when the claimant provided ample evidence and the administrator never requested any additional kind of evidence. *Oliver,* 497 F.3d at 1196-97.

50.     Here, Ms. Luebbert provided extensive objective and subjective evidence of her disabilities.   Her medical records contain well-documented complaints of fibromyalgia, anxiety, depression, GERD, chronic fatigue, migraines, poor memory and concentration, IBS, bursitis of hips, and side effects from the various mediactions prescribed for these ailments. Although Sun Life had paid medical reviewers consider her file, those reviewers never actually examined Ms. Luebbert (until Dr. Mandel's single examination upon Ms. Luebbert's LTD appeal), and they failed to provide any valid independent basis for their conclusion that she is not disabled under the Plan.  Here, Ms. Luebbert has provided subjective evidence *and extensive objective evidence*, all supporting her claim of disability as defined in the Plan.   Accordingly, Defendant's decision to deny disability benefits was substantively unreasonable.

C.    **Sun Life Unreasonably Failed to Properly Consider Ms. Luebbert's Non-Exertional Limitations and the Cognitive Requirements.**

51.    As previously stated, the Defendant presumably found that Ms. Luebbert is capable of performing the duties of her job at Covenant. However, the occupation requires far more than the ability to perform the physical requirements of the job. In *Demirovic v. Bldg. Serv. 32 B-J Pension Fund,* 467 F.3d 208, 213-14 (2d Cir. 2006)*,* the Court stated, "[A] reasonable interpretation of a claimant's entitlement to payments based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances." Thus, an administrator must consider whether a beneficiary has "the vocational capacity to perform any type of work . . . that actually exists in the national economy." *Id.* at 213-215.

52.    The Court must consider a plaintiff's non-exertional limitations, including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *See Rabuck v. Hartford Life and Accident Ins. Co.,* 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis

17

"incredible").

53.     All of Ms. Luebbert's treating physicians consistently supported her disability claim in both treatment notes and medical statements provided to Sun Life. Furthermore, Ms. Luebbert's psychiatrist Dr. Ali Ibrahim diagnosed her with an adjustment disorder with mixed emotions and anxiety. Plaintiff's secondary medical issues compound her primary problems and it was unreasonable for the Defendant to fail to properly consider the impacts of Ms. Luebbert's non-exertional limitations in its decision.

### D.     Plaintiff Received a Favorable Decision from the Social Security Administration on the Question of Disability.

54.     Ms. Luebbert was approved for SSDI benefits after she exhausted her administrative remedies.

55.     In stark contrast to Sun Life's findings that Ms. Luebbert had no medical impairment that would limit her ability to perform a full-time sedentary occupation, the Social Security Administration found her to be disabled starting on May 12, 2017 and granted her SSD benefits.

56.     Moreover, the SSA's determination was based on *all* of Ms. Luebbert's medical information, including (but not limited to) recent medical documentation that Sun Life completely rejected as to her disability determination.

57.     When considering whether a claimant is disabled under sections 216(i) and 223(d) of the Social Security Act, the agency must determine whether the

claimant has the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

58.     Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

59.     At step one, the agency must determine whether the claimant is engaged in substantial gainful activity (20 CFR 404.1520(b)). If an individual engages in substantial gainful activity, he or she is not disabled regardless of how severe his or her physical or mental impairments are and regardless of his or her age, education, or work experience. If the individual is not engaged in SGA, the analysis proceeds to the second step.

60.     At step two, the agency must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does

not have a severe medically determinable impairment or combination of impairments, he or she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

61.    At step three, the agency must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

62.    Before considering step four, the agency must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations form his or her impairments.

63.    Next, the agency must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  If the claimant is unable to do any past relevant work

or does not have any past relevant work, the analysis proceeds to the fifth and last step.

64.    At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the agency must determine whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.  If the claimant is able to do other work, he or she is not disabled. If the claimant is not able to do other work and meets the duration requirement, he or she is disabled.

65.    Courts have determined that the Social Security Administration's disability decision should be a "significant factor" in a Court's consideration of an administrator's decision to terminate plaintiff's disability benefits. *Glenn,* 461 F.3d at 669. *See also Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005) ("the SSA determination, though certainly not binding, is far from meaningless"). Even though a favorable decision in a Social Security disability appeal does not make a claimant automatically entitled to disability benefits under an ERISA plan: [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the administrator's decision was arbitrary or capricious.  *Bennett v.*

*Kemper Nat. Services, Inc.,* 514 F.3d 547, 554 (6th Cir. 2008). *See also DeLisle v. Sun Life Assur. Co. of Canada,* 558 F.3d 440, 446 (6th Cir. 2009).

66.     Indeed, "a decision by a plan administrator to seek and embrace an SSA determination for its own benefit, and then ignore or discount it later, casts additional doubt on the adequacy of their evaluation of . . . [a] claim[.]" *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294-95(6th Cir. 2005).

67.     In *Darland v. Fortis Benefits Insurance Company,* 317 F.3d 516 (6th Cir. 2003), the Sixth Circuit held that a court should consider a favorable social security decision as evidence that an insurance company acted arbitrarily and capriciously by requiring a claimant to apply for social security, then ignoring the favorable social security decision. The Court explained:

> [I]t is totally inconsistent for Fortis to request that Darland apply for social security disability benefits, yet avail itself of that social security determination regarding disability to contend, at the same time, that he is not disabled. ... Though not directly applicable in this case, the principles of judicial estoppels certainly weigh against Fortis taking such inconsistent positions.

317 F.3d at 530.

68.     The Eleventh Circuit examined the juxtaposition between a Defendant insurer's self-interested SSD benefit policy requirements and its failure to give an SSA decision appropriate weight in its own disability denial determination under that same policy.  *Melech v. Life Insurance Co. of N.A.*, 739 F.3d 663 (11th Cir.

2014). On appeal, the *Melech* Court described Defendant LINA's policy in that case as follows:

> To summarize, the Policy effectively requires all claimants to apply for SSDI [Social Security Disability Income] at the outset; if a claimant fails to do so, Liberty can reduce her benefits under the Policy, if any, by the amount of SSDI Liberty says she could have gotten. In the event that Liberty decides to pay a claim, the Policy allows Liberty to hold the claim open, at least with respect to the total amount Liberty must pay, until the SSA reaches a final decision. Liberty may assist the claimant in obtaining SSDI, even going so far as to transfer the medical evidence that Liberty gathered to Liberty's vendor, who then presumably transfers it to the SSA. And if the SSA denies the claimant's application, Liberty can force the claimant to exhaust her administrative appeals. All this effort makes perfect sense from Liberty's perspective because--having decided to pay the claim--every dollar the claimant gets from the SSA is one less dollar LIBERTY has to pay.

*Melech*, 739 F.3d at 668. Given these policy provisions and the fact that LINA, at the time of its denial, did not have the evidence plaintiff presented to the SSA, the Court held "*that LINA had an obligation to consider the evidence presented to the SSA.*" *Id.* at 666 (emphasis added). The Court went on to state that "in light of these openly self-interested efforts, *we are troubled by the implication of LINA's actions in Melech's case, where it ignored her SSDI application and the evidence generated by the SSA's investigation once it no longer had a financial stake in the outcome.*" *Id.* at 674 (emphasis added).

69.     Ms. Luebbert applied for and was granted Social Security disability benefits following the denial of her appeal to Sun Life.

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

70.   Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

71.   At all times relevant to this action, Ms. Luebbert was a participant of the LTD Policy No. 224775 ("the Plan") within the meaning of 29 U.S.C. §1002(7), and was eligible to receive disability benefits under the Plan.

72.   As more fully described above, the refusal to pay Ms. Luebbert's benefits under the Plan for the period from at least on or about May 16, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA.  Defendant's decision to deny Ms. Luebbert's benefits constitutes an abuse of discretion as its decision was not reasonable and not based on substantial evidence.

73.   Ms. Luebbert brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.   The applicable standard of review in this case is *de novo*.

2.   That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

24

3.      Ms. Luebbert met and continues to meet the Plan's definition of "Totally Disabled";

4.      Defendant shall pay Ms. Luebbert all benefits due in accordance with the Plan;

5.      Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6.      Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

7.      Defendant shall pay attorney's fees for Plaintiff's counsel;

8.      Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

Respectfully submitted this the 23rd day of July, 2021.

*/s/ Peter H. Burke*
Peter H. Burke (ASB-1992-K74P)
PHBurke@crumleyroberts.com
BURKE HARVEY, LLP
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-378-6172
Fax: 877-718-9952
*Attorney for Plaintiff Lori Luebbert*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT**:

Sun Life Assurance Company of Canada
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104